CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 2019-10715

DIVISION:

DOCKET NO: C-10

FILED OCT 10 2019
CLERKS OFFICE
CIVIL DISTRICT COURT

ERIC JUDE WYBLE

VERSUS

BISSO MARINE, LLC

FILED: _____      _____
                                      DEPUTY CLERK

## SEAMAN'S PETITION FOR DAMAGES

COMES NOW, Eric Jude Wyble ("Wyble"), complaining of Bisso Marine, LLC ("Bisso Marine"), and for cause of action, Wyble respectfully show and represent unto this Honorable Court, as follows:

### JURISDICTION

1. Jurisdiction of this Honorable Court is based on the provisions of the Jones Act, 46 USC §30104, *et seq.*, the General Maritime Law, as well as on the Savings to Suitors Clause, of the Judiciary Act of 1789 and 28 U.S.C. § 1333.

### VENUE

2. Venue is proper in this Honorable Court, because Bisso Marine is a Louisiana company, having its principal Louisiana business establishment in New Orleans, Louisiana.

### PLAINTIFF

3. Wyble, age 49, is a person of the full age of majority and a resident of Welsh, Jefferson Davis Parish, Louisiana.

### DEFENDANT

4. Bisso Marine is thought to be a Louisiana limited liability company, organized and existing by virtue of the laws of this State, having its principal Louisiana business establishment in New Orleans, Louisiana, and it may be cited to appear and answer herein by serving its registered agent for service of process; namely, David Reisman, 701 Poydras Street, Suite 5000, New Orleans, Louisiana 70139.

EXHIBIT
WYBLE 2

5. That, at all times relevant herein, Bisso Marine owned, operated, managed, and controlled the *TUG WILLIAM BISSO*. The *TUG WILLIAM BISSO* is and was, an anchor handling tug some 115 ft. in length, 32 ft. in width and 14 ft. in depth, as shown in Exhibit "A" below.



Exhibit "A"

6. That, at all times relevant herein, Bisso Marine owned, operated, managed, and controlled the *BISSO SUBSEA VISION*. The *BISSO SUBSEA VISION* is, and was, a construction barge some 415 ft. in length, 100 ft. in width and 25 feet in depth, as shown in Exhibit "B" below.



Exhibit "B"

## **SEAMAN STATUS**

7. That, at all times relevant herein, Wyble was employed by Bisso Marine and assigned to work as an engineer on, with, and aboard the *TUG WILLIAM BISSO* and was earning, or had the capacity to earn, in excess of $63,000.00/year, plus found and fringe benefits.

8. That, at all times hereinafter mentioned, Wyble was assigned to, and performed virtually all of his work for Bisso Marine, on, with, and aboard its fleet of tug boats including, the *TUG WILLIAM BISSO*.

9.  That, at all times hereinafter mentioned, the *TUG WILLIAM BISSO* was in navigation in the Gulf of Mexico, off the Louisiana coast, in an area, commonly referred to as East Cameron, Block 281.

## *FACTS OF THE CASE*

10. That, on Wednesday, October 12, 2016, at about 12:25 PM, the *TUG WILLIAM BISSO* and *TUG CROSBY TROJAN* were part of a flotilla of vessels working in support of, and in connection with, the *BISSO SUBSEA VISION* in the Gulf of Mexico, in an area, commonly referred to as East Cameron, Block 281, involving a variety of subsea infrastructure services including, several subsea abandonments in water depths ranging from 300 ft. to over 700 ft.

11. That, on that date, time, and at that place, the *TUG CROSBY TROJAN*, towed a deck barge, the *MARMAC 32*, along side of the *BISSO SUBSEA VISION*.

12. That, on that date, time, and at that place, the *TUG WILLIAM BISSO* was "hipped-up" to the *MARMAC 32*, being towed by the *TUG CROSBY TROJAN*.

13. That, on that date, time, and at that place, Wyble and a co-employee were ordered to disregard extremely adverse weather conditions and board the *MARMAC 32* in order to disconnect the *TUG CROSBY TROJAN*'S tow wire which was attached to the *MARMAC 32* – with shackles. To further explain, the *TUG CROSBY TROJAN* was using a two part tow brindle - one leg of the tow bridle was shackled to the starboard bow and the other part was shackled to the port bow of the *MARMAC 32*; Wyble and his co-employee were in the process of removing the port bow tow wire shackle when the port tow wire, suddenly and without warning, lifted off the deck and struck Wyble's right lower extremity with such force and violence that Wyble was knocked off his feet, and rendered unconscious and was, thereby caused to suffer the injuries and damage described in more detail below.

## *JONES ACT AND UNSEAWORTHINESS CLAIMS*

14. That, the injuries suffered by Wyble were caused by reason of Bisso Marine's legal fault, negligence, carelessness, and omission of duty, as well as by the unseaworthiness of the *TUG WILLIAM BISSO*, without any legal fault, negligence, carelessness or omission of duty on the part of Wyble, causing or contributing in any way thereto.

15. That, Bisso Marine's legal fault, negligence, carelessness, and omission of duty and the unseaworthiness of the *TUG WILLIAM BISSO*, consisted of the following non-exclusive acts and omissions:

- in failing to provide Wyble with a safe place to work;

- in failing to warn Wyble concerning conditions in the work place which caused it to be unfit, unsafe, and unsuitable;

- in failing to instruct Wyble concerning the safe conduct of the work then and there in progress;

- in failing to provide Wyble with adequate, proper, and sufficient supervision when and where the work was being performed;

- in failing to take precautions to prevent, or for that matter, in failing to take any precautions to prevent the unfit, unsafe and unsuitable work conditions which then and there existed;

- in failing to provide Wyble with adequate, proper, and safe tools, machinery, and equipment at the time of, and at the place where, the work was to be performed;

- in failing to provide Wyble with an adequate number of competent co-employees;

- in failing to adopt policies, practices, and procedures designed specifically to prevent the injuries and damage suffered by Wyble or, in the alternative, in failing to enforce its policies, practices, and procedures designed specifically to prevent the injuries and damage suffered by Wyble;

- in failing to conduct a proper, adequate and sufficient job site analysis, concerning the work to be performed by the *TUG WILLIAM BISSO* and her crew to identify hazards presented by the work and in the workplace;

- in failing to provide adequate, proper, and sufficient hazard prevention controls at the time of, and at the place where, the work was being performed;

- in that Bisso Marine ordered Wyble and a co-employee to board the *MARMAC 32* when the weather condition caused the workplace to be unfit, unsafe, and unsuitable;

- in that Bisso Marine ordered Wyble and a co-employee to board the deck barge and disconnect the *TUG CROSBY TROJAN*'s tow wire when the weather condition caused the workplace to be unfit, unsafe, and unsuitable;

- in that Bisso Marine failed to comply with the Bureau of Safety and Environmental Enforcement SEMS Requirements and Regulations including, without limitation, 30 C.F.R. § 250.1930, *et seq.*

- in failing to furnish Wyble prompt, adequate and sufficient maintenance and cure, and

- any and all other acts of legal fault, negligence, carelessness, and omission of duty on the part of Bisso Marine that may be established during pretrial discovery or shown during the trial of this matter.

16. That, because Bisso Marine violated the Bureau of Safety and Environmental Enforcement SEMS Requirements and Regulations, in general, and in particular, 30 C.F.R. § 250.1930, *et seq.*, of the Bureau of Safety and Environmental Enforcement SEMS Requirements and Regulations and, therefore, Bisso Marine is liable to Wyble under the maritime doctrine of negligent per se. *Kernan v. American Dredging Co.*, 355 U.S. 426, 78 S. Ct. 394; 2 L.Ed. 2d 382 (1957); *Choa v. Mallard Bay Drilling, Inc.*, 534 U.S. 2351, 122 S. Ct. 738, 151 L.Ed. 2d 659 (2002) *Roy Crook & Sons, Inc. v. Allen*, 778 F. 2d 1037 (5th Cir. 1985); *Watterson v. Mallard Bay Drilling, Inc.*, 649 So.2d 43193-1494 (La.App. 3 Cir. 1994).

17. That, by reason of Bisso Marine's negligence and negligence *per se*, as well as by the unseaworthiness of the *TUG WILLIAM BISSO*, Wyble sustained serious and permanent injury including, among others, injury to his head, left elbow, right wrist, right knee and right ankle; that Wyble's injury to his right ankle was so severe that he was taken to surgery on October 27, 2016 by Dr. John K Pourciau of Lake Charles, Louisiana, for on open reduction and internal fixation of the right ankle; that Wyble's injury to his right knee was so severe that after a lengthy period of conservative treatment, he was taken to surgery on July 2, 2019 by Dr. Malcolm J. Stubbs of Lafayette, Louisiana, for right knee arthroscopy with arthroscopic-assisted ACL reconstruction; that, as a consequence thereof, Wyble has been incapacitated from his usual work and prevented from pursuing his ordinary occupation; that his ability to perform work has been, and will be, as a result of said injuries greatly lessened, diminished, and affected; that his ability to engage in recreational activities, has been as a result of said injuries, lessened, diminished and affected; that Wyble is informed and believes that the injuries which he suffered as a result of Bisso Marine's negligence and the unseaworthiness of the *TUG WILLIAM BISSO* are permanent and create a condition which will cause disability and seriously interfere with his enjoyment of life; that he has required and may require in the future medical treatment as a result of said injuries and that Wyble is informed and believes that he has been otherwise permanently injured and that he has become and remains seriously disabled.

18. That, as a consequence of the foregoing, Wyble has suffered, is suffering, and will continue to suffer past, present, and future damages including, without limitation, physical pain and suffering; mental pain and suffering disability including, fear, anxiety, humiliation, and embracement; past and permanent future disability; past and future wage loss, loss of earning capacity, loss of fringe benefits, loss of household services, and loss of "found"; loss of enjoyment

of life, as well as past medical expenses and future medical expenses in an amount reasonable in the premises.

### *MAINTENANCE AND CURE*

19. That, Wyble re-alleges and re-avers Paragraphs 1 thru 18 above, as though set forth hereinafter in extenso.

20. That, by virtue of the injury and disability Wyble suffered while in the service of the *TUG WILLIAM BISSO*, he is, and has been, entitled to maintenance and cure.

21. However, Bisso Marine has failed, and otherwise, refused to pay to him, or on his behalf, adequate maintenance and proper cure.

22. To explain. Bisso Marine, without reasonable inquiry of any kind, quite arbitrarily has paid Wyble maintenance at the rate of no more than $28.00/day during the period of his disability when in fact, Wyble was entitled to maintenance at the rate of no less than $42.00/day, because Wyble's living expenses are in the neighborhood of $1,283.00/mo. -- @$500.00/mo. for electricity and water (Town of Welsh); @$250.00/mo. for cable service (DirectTV); internet @$133.00, and @$400.00/mo for food.

23. Furthermore, Bisso Marine has acted unreasonably and with wilful and wanton disregard of Wyble's right under the general maritime law to receive proper cure. To be sure, even though Bisso Marine became aware on September 7, 2018 that Wyble was in need of medical treatment related to the October 12, 2016 work accident; namely, right knee arthroscopy with arthroscopic-assisted ACL reconstruction, and even though Bisso Marine did not dispute Wyble's need for the proposed medical treatment, it failed and refused, for almost eight (8) months - - until May 21, 2019 - - to provide the necessary authorization and financial assurances to the healthcare providers involved in this phase of Wyble's medical treatment, so that Wyble could receive necessary medical treatment, he required, concerning his right lower extremity.

24. In consequence, Wyble is entitled to have punitive damages assessed against Bisso Marine, as well as an award of attorney's fees, because he has been required to retain the services of an attorney to file this lawsuit in order to assert his right to receive proper, adequate and prompt, maintenance and cure.

### *DAMAGES*

25. That, Wyble re-alleges and re-avers Paragraphs 1 thru 24 above, as though set forth hereinafter in extenso.

26. In consequence, Wyble is entitled to all damages in an amount reasonable in the premises.

27. Wyble prays for, and is entitled to, trial by jury.

WHEREFORE, Wyble prays that Bisso Marine, LLC be served with a copy of this, his, Seaman's Petition for Damages and that Bisso Marine, LLC be duly cited to appear and answer herein; that after the lapse of all legal delays and due proceedings had, that there be judgment in favor of Wyble and against Bisso Marine, LLC in an amount reasonable in the premises, together with legal interest, all costs of these proceedings, and for trial by jury.

> LAWRENCE N. CURTIS, LTD.
> (A Professional Law Corporation)
> 300 Rue Beauregard, Bldg. C
> Post Office Box 80247
> Lafayette, Louisiana 70598-0247
> Telephone: (337) 235-1825
> Facsimile: (337) 237-0241
> E-mail: larry@larrycurtis.com
> d.a...@larrycurtis.com
>
> BY: _____
> LAWRENCE N. CURTIS (4678)
> D'ANN R. PENNER (35545)

**PLEASE SERVE**:

Bisso Marine, LLC
through its registered agent
for service of process:
David Reisman, Esq.
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139